UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. PX25CR70 |
| Plaintiff, | 18 U.S.C. §§ 1343, 1349 (Conspiracy to Commit Wire Fraud) |
| v. | 18 U.S.C. § 1956 (a)(1)(B)(i) (Money Laundering) |
| KIMBERLY GOODWIN, | 18 U.S.C. § 1957 (Money Laundering) |
| Defendant. | |

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times material to this Indictment:

**A. Background**

USDC- GREENBELT
'25 MAR 20 PM4:16

1. The American Federal of Government Employees (AFGE) was a labor organization based in Washington, D.C. that represented federal employees. Local 2419 of the AFGE represented approximately 500 federal employees in several occupations at the National Institutes of Health ("the NIH") in Bethesda, Maryland and elsewhere. At any time, from 100 to 160 of those 500 employees were members of Local 2419.

2. In 2001, the NIH and Local 2419 executed a collective bargaining agreement ("the CBA") covering all represented employees working at the NIH. The parties renewed the CBA successively until March 2023.

3. Local 2419 was governed by the Standard Local Constitution of the AFGE ("the Standard Local Constitution ") and by-laws adopted by Local 2419 (the "Local 2419 By-laws").

The Standard AFGE Local Constitution and the Local 2419 By-laws required each local to hold a mandatory membership meeting once per quarter.

4. Article VII, Section 3 of the Standard AFGE Local Constitution requires that expenditures of the Executive Board of a local union in excess of $500 per month must have prior approval of the local's members either as authorized by the budget approved by the local or by separate vote of the local's members. Section 21 of the Local 2419 By-laws, entitled "Executive Board Expenditures" reiterates that such expenditures "shall be governed by the provisions of Article VII, Section 3, the Local Constitution."

5. From July 1997 to August 2019, Defendant KIMBERLY GOODWIN was employed as a contract analyst by the NIH and was a member of Local 2419. From January 2017 to August 2019, Defendant GOODWIN served as President of Local 2419.

6. From December 2013 to August 2022, Coconspirator One was employed as a prep cook by the NIH and was a member of Local 2419. From September 2017 to June 2022, Coconspirator One served as Secretary-Treasurer of Local 2419.

7. From March 2008 until the present, Coconspirator Two was employed as night shift maintenance mechanic by the NIH and was a member of Local 2419. From August 2019 to November 2022, Coconspirator Two served as President of Local 2419.

8. In March 2004, Local 2419 filed a lawsuit against the NIH alleging violations of the Fair Labor Standards Act (FLSA) on behalf of all bargaining unit employees for failure to pay weekend differential wages. In December 2016, the parties agreed on a final settlement wherein the NIH agreed to pay $8,000,000, to be distributed to the plaintiff-employees.

9. On March 29, 2017, Defendant GOODWIN placed $652,700.13 of the $8,000,000 settlement into the Local 2419 bank account. Prior to this deposit, the Local 2419 typically held

between $40,000 and $80,000 in its bank account and received approximately $40,000 per year in dues revenue.

10. In September 2017, Defendant GOODWIN drafted Subsection 26.4 to the Local 2419's Bylaws specifying that, "The Local shall collect a gross fee of seven percent on all monetary awards received from group grievances or class action lawsuits."

11. On September 20, 2017, Defendant GOODWIN and Coconspirator One placed Subsection 26.4 into a written copy of the Local 2419 By-laws and signed and certified that copy of the by-laws electronically. Defendant GOODWIN and Coconspirator One did not obtain the approval of the Local 2419 membership for this change in the Local 2419 By-Laws as required by the Standard AFGE Local Constitution and the Local 2419 By-laws.

12. In August 2019 and August 2020, pursuant to Subsection 26.4 of the Local 2419 By-laws, Defendant GOODWIN and Coconspirator One placed into the Local 2419 treasury, seven (7) percent of two additional settlements for grievances filed by Local 2419 against the NIH, totaling $482,353.28 .

**B. Lost Time**

13. The CBA between the NIH and Local 2419 contains Article 6, entitled "Official Time" where union representatives are compensated for "reasonable time" at their regular rate when they are conducting union-management business. Section 4 of Article 6 provides that Local 2419 representatives, in sum, will be allowed an annual bank of 2,400 hours of official time available to be paid by the NIH and which will be jointly administered by the NIH Labor Relations Office and the Local 2419 President.

14. In 2017, Defendant GOODWIN devised a "lost time policy" ("Lost Time Policy") for Local 2419 intended to compensate Local 2419 officers for any time spent working on union

matters not covered by official time. The Lost Time Policy devised by GOODWIN states:

> Lost Time Payments are reimbursements received for wages and/or leave lost or used while conducting union business for the Union not covered by official time.
>
> . . .
>
> Local 2419 officers are not authorized to receive lost time from Local 2419 while in a pay status with the employer (i.e. official time, annual leave, sick leave, etc.).

15. The Lost Time Policy drafted by Defendant GOODWIN specifies that the Local 2419 officer requesting lost time must submit their application to the President, that is, Defendant GOODWIN, for "approval before they use the time." Defendant GOODWIN never presented the Lost Time Policy to the Local 2419 Executive Board or membership for approval as required by the Standard Local Constitution and Local 2419 By-laws. Notwithstanding the failure to obtain approval, GOODWIN applied the Lost Time Policy as though it was properly adopted by Local 2419.

C. **Good Leaders**

16. On or about January 2019, while an employee at NIH and while serving as Loca 2419 President, Defendant GOODWIN formed Good Leaders, LLC with herself as its sole owner and her home address as its business address.

17. On August 7, 2019, Defendant GOODWIN agreed to resign from her employment with the NIH in settlement of several outstanding grievances filed by her and to avoid being terminated. Upon her resignation, Defendant GOODWIN was no longer eligible to serve as President of Local 2419 and, pursuant to the Standard Local Constitution and Local 2419 By-laws, Coconspirator Two assumed the office as President. Following her resignation, Defendant GOODWIN nonetheless retained sole signatory authority over the Local 2419 treasury in an

account at NIH Federal Credit Union.

18. On August 10, 2019, Defendant GOODWIN presented Coconspirator Two with a "staffing/service agreement" between Good Leaders and Local 2419 which she had drafted ("The Good Leaders Agreement"). The Good Leaders Agreement permitted Good Leaders to perform all representational and internal functions of Local 2419 on a consultancy basis. The Good Leaders Agreement specified that Good Leaders would receive, among other considerations:

- a guaranteed minimum of sixty (60) hours per week at a rate of $43.50 per hour, whether Good Leaders performed any work or not, resulting in an annual guaranteed payment of more than $2,600 per week and at least $140,000 per year;
- per-hour fees for any work performed by business agents employed by Good Leaders in addition to the guaranteed minimum;
- a "set up" fee equal to eight weeks of guaranteed minimum, or more than $20,000, upon execution of the agreement;
- an accelerated payment of the full remainder of the agreement if Local 2419 does not contact Good Leaders for seven days.

19. The same day, Defendant GOODWIN and Coconspirator Two signed the Good Leaders Agreement. Neither Defendant GOODWIN nor Coconspirator Two presented the Good Leaders Agreement to the Local 2419 Executive Board or membership for approval as required by the Standard Local Constitution and Local 2419 By-laws approving awards under it.

20. From March 2020 through January 2022, Defendant GOODWIN purchased four (4) cashier's checks using the funds from Local 2419 treasury to the order of Good Leaders in the following amounts: 1) $125,400.00 (March 30, 2020); 2) $15,000.00 (August 17, 2020); 3) $162,240.00 (October 14, 2020); and 4) $81,120.00 (January 24, 2022) as advances on its annual guaranteed minimum.

21. From August 2019 through June 2022, Defendant GOODWIN sent by email weekly invoices from Good Leaders to Coconspirator One and Coconspirator Two for amounts up to

$5,000 per week. Coconspirator One approved those invoices and made a corresponding debit notation in the Local 2419 ledgers. Defendant GOODWIN thereafter executed a corresponding wire transfer of funds from the Local 2419 treasury to the Good Leaders' bank account.

### D. AFGE Trusteeship over Local 2419

22. In the Spring of 2022, Defendant GOODWIN informed Coconspirator One and Coconspirator Two that the Local 2419 would soon run of out funds and be unable to pay the guaranteed minimum to Good Leaders.

23. In June 2022, Local 2419 ran out of funds entirely and discontinued making payments to Good Leaders. At that time, Coconspirator One and Coconspirator Two resigned their offices.

24. Also in June 2022, the AFGE instituted an emergency trusteeship over Local 2419 due to lack of leadership and began an investigation of its finances. On November 29, 2022, the AFGE placed Local 2419 into formal trusteeship and dismissed all of its existing officers. On August 11, 2023, the AFGE ratified the trusteeship over Local 2419 following a hearing based upon the following findings:

- No Executive Board election since 2018.
- No financial report to membership.
- Lack of Leadership due to (multiple) vacant Executive Board Officers positions.
- Formation of a "Company" [Good Leaders] within the local federation, which is a direct violation of the AFGE National Constitution.
- The local had filed several "lawsuits/grievances" against the agency resulting in multiple monies paid to the local.
- Previous Leadership hired themselves to work for the Local without the approval of the membership.
- The "Company" [Good Leaders] which was formulated consisted of [Conspirator One] President who hired [Defendant GOODWIN] and others to help run the company.

- The "Company" [Good Leaders] rented office space and paid themselves over $9000.00 per week.

- Financial Malfeasance of accounts from 2020-2022 which were severely overdrawn by $100,000+.

- Cash withdrawal of $162,240 on 10/14/20 made by [Defendant GOODWIN].

- Purchase of a $8000.00 Massage chair.

- Cash withdrawal of $81,120 on 1/24/22.

- Excessive amount of cash withdrawals with no way of tracking union funds.

- Excessive amount of cash withdrawals without 2 person signatures.

- The membership was not aware of when nor where the union meeting took place.

- No notice of membership meeting has been sent out to the members informing them of the time or place for attendance.

- The Chief Steward [] spoke on behalf of the Local stated that "there has not been a membership meeting since 2020 and they did not know if a quorum was ever met because he did not know what quorum meant."

- [Coconspirator One] quit in 2022 because "the money ran-out."

## COUNT ONE
## (18 U.S.C. § 1343, 1349)

### (Conspiracy to Commit Wire Fraud)

1. The allegations contained in paragraphs 1 through 24 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2. Beginning at least as early as January 2017, and continuing at least through August 2023, both dates being approximate and inclusive, the exact dates being unknown to the Grand Jury, in the District of Maryland and elsewhere, Defendant KIMBERLY GOODWIN and Coconspirator One, Coconspirator Two, and other persons both known and unknown to the Grand Jury, did unlawfully and knowingly devise and intend to devise a scheme and artifice to defraud Local 2419 and to obtain by means of false and fraudulent pretenses, representations, and promises, the money and property owned by Local 2419.

### The Scheme to Defraud

3. It was part of the scheme and artifice to defraud devised by Defendant GOODWIN and Coconspirator One to obtain money and property of Local 2419 by:

a) devising an unauthorized lost time policy and approving awards under it which are either outside of the terms of that policy and/or are based on falsely inflated hours;

b) devising an unauthorized agreement with Good Leaders and making payments pursuant to that agreement which are either outside of the terms of that of agreement and/or are based on falsely inflated hours or non-existent services.

### Manner and Means of the Scheme to Defraud

4. It was part of the said scheme and artifice that Defendant KIMBERLY GOODWIN, Coconspirator One, and Coconspirator Two would obtain hundreds of thousands of dollars from the Local 2419 through false and unauthorized payments under the Lost Time Policy and the Good Leaders Agreement.

5. It was part of the said scheme and artifice that Defendant GOODWIN and Coconspirator One would draft a proposed Subsection 26.4 and falsely certify that it was part of the Local 2419 By-laws without submitting it to the Local 2419 membership for review and approval in violation of Standard Local Constitution and the Local 2419 By-laws.

6. It was part of the said scheme and artifice that Defendant GOODWIN and Coconspirator One would rely on the unauthorized Subsection 26.4 to divert more than $1.1 million in settlement funds due to NIH employees into the Local 2419 treasury.

7. It was part of the said scheme and artifice that Defendant GOODWIN, Coconspirator One, and Coconspirator Two would fail to hold regularly scheduled triennial elections for officers in Local 2419 in January 2021 as required by the Standard Local Constitution, the Local 2419 By-laws, and federal law, and that Coconspirator One and Coconspirator Two would continue to exercise the powers of their respective offices in Local 2419 indefinitely.

8. It was part of the said scheme and artifice that Defendant GOODWIN, Coconspirator One, and Coconspirator Two would fail to hold quarterly meetings of the Local 2419 membership in violation of Standard Local Constitution and the Local 2419 By-laws.

9. It was part of the said scheme and artifice that Defendant GOODWIN, Coconspirator One, and Coconspirator Two would fail to submit annual budgets for Local 2419 to, and obtain approval of those budgets from, the Local 2419 membership in violation of Standard Local Constitution and the Local 2419 By-laws.

10. It was part of the said scheme and artifice that Defendant GOODWIN, Coconspirator One, and Coconspirator Two would fail to file annual financial reports with the United States Department of Labor, known as LM-3 reports, which would have provided comprehensive information on Local 2419's finances, in violation of federal law.

11. It was part of the said scheme and artifice that Coconspirator One would permit Defendant GOODWIN to remain the sole signatory on the bank account for the Local 2419 treasury after GOODWIN was no longer President of Local 2419 leaving GOODWIN in sole control of the Local 2419 treasury.

12. It was part of the said scheme and artifice that Defendant GOODWIN would devise the Lost Time Policy which entitled Local 2419 officers to compensation for union business not covered by Official Time, but would fail to submit that policy for adoption before the Executive Board or membership of Local 2419 as required by the Standard AFGE Local Constitution and Local 2419 By-laws.

13. It was part of the said scheme and artifice that Defendant GOODWIN would make awards of thousands of dollars under the unauthorized Lost Time Policy to herself, Coconspirator One, Coconspirator Two, and others which were not authorized under the terms of that policy; contained inflated hours; and where the recipient had already received compensation for the requested time under the Official Time provision in the CBA.

14. It was part of the said scheme and artifice that Defendant GOODWIN, Coconspirator One, and Coconspirator Two would fail to submit any awards under the unauthorized Lost Time Policy exceeding $500 per month to the Local 2419 membership for approval in violation of Standard Local Constitution and the Local 2419 By-laws.

15. It was part of the said scheme and artifice that Defendant GOODWIN would draft the Good Leaders Agreement with unconscionable terms including guaranteed minimum weekly payments of approximately $3,000 to Good Leaders, which amounted to nearly double Local 2419's typical annual dues revenue, and an initial fee of more than $22,000, without any obligation to provide any services to Local 2419 in return.

16. It was part of the said scheme and artifice that Defendant GOODWIN, Coconspirator One, and Coconspirator Two would fail to present the Good Leaders Agreement for adoption before the Executive Board or membership of Local 2419 as required by the Standard AFGE Local Constitution and Local 2419 By-laws.

17. It was part of the said scheme and artifice that Defendant GOODWIN would draft modifications to the Good Leaders Agreement in September 2020, December 2021, and July 2022, extending its term and providing more favorable terms to Good Leaders and that Coconspirator One and Coconspirator Two would acknowledge and approve each of those modifications.

18. It was part of the said scheme and artifice that Defendant GOODWIN, Coconspirator One, and Coconspirator Two would fail to present those modifications of the Good Leaders Agreement for adoption before the Executive Board or membership of Local 2419 as required by the Standard AFGE Local Constitution and Local 2419 By-laws.

19. It was part of the said scheme and artifice that Defendant GOODWIN would purchase cashier's checks using funds from the Local 2419 treasury totaling $391,260 and deposit them in the bank account for Good Leaders in satisfaction of the guarantee minimum payments in the unauthorized Good Leaders Agreement.

20. It was part of the said scheme and artifice that Defendant GOODWIN submit false weekly invoices from Good Leaders to Defendant Coconspirator One and Conspirator One by email billing Local 2419 for up to $5,000 for services never provided, including monthly bookkeeping services, tax services, and yearly fourteen (14) week leadership training seminar at a cost of more than $15,000.

21. It was part of the said scheme and artifice that Coconspirator One would accept the false weekly invoices from Good Leaders and note her approval of all the sums requested by

11

Defendant GOODWIN by entering those sums into the Local 2419 ledgers and initialing her approval in the ledger.

22. It was part of the said scheme and artifice that Defendant GOODWIN would transfer the amount of money on the weekly invoice she generated from Good Leaders from the Local 2419 treasury into the Good Leaders' bank account via wire bank transfer.

23. It was part of the said scheme and artifice that Defendant GOODWIN would transfer the amount of money stated on the weekly invoice she generated from Good Leaders from the Local 2419 treasury into the Good Leaders' bank account via wire bank transfer.

24. It was part of the said scheme and artifice that Defendant GOODWIN would transfer more than $217,000 of the funds she collected on behalf of Good Leaders through numerous bank accounts, and into cash, before depositing those funds into her personal account at Navy Federal Credit Union in order conceal the nature, the location, the source, the ownership, and the control of those funds collected by Good Leaders.

25. It was part of the said scheme and artifice that Defendant GOODWIN, Coconspirator One, and Coconspirator Two would fail to keep the financial records of Local 2419, and to withhold and destroy the same, in violation of Standard Local Constitution, the Local 2419 Bylaws, and federal law.

26. It was part of the said scheme and artifice that Defendant GOODWIN and Coconspirator One would obstruct the investigations of the United States Department of Labor and the AFGE by withholding and destroying records that would reveal that they had taken more than $974,000 in unauthorized payments from the Local 2419 treasury under the Lost Time Policy and Good Leaders Agreement.

### Overt Acts

27. From 2017 to June 2022, Defendant GOODWIN approved numerous awards of lost time exceeding $500 month to herself, to Coconspirator One, and to Coconspirator Two pursuant to the Lost Time Policy without obtaining the approval of the membership of Local 2419 as required by the Standard AFGE Local Constitution and the Local 2419 By-laws.

28. From August 2019 to June 2022, Defendant GOODWIN executed hundreds of wire transfers, totaling $471,378.43, in funds from the Local 2419 treasury to the Good Leaders account at Navy Federal Credit Union.

29. From August 2019 to June 2022, Coconspirator One approved hundreds of weekly invoices from Good Leaders and noted them as legitimate expenses in the Local 2419 ledgers.

30. From August 2019 to June 2022, Defendant GOODWIN deposited cashier's checks she purchased from the funds in the Local 2419 treasury, totaling $406,378.43, and deposited them in the Good Leaders account at Navy Federal Credit Union.

### Execution of the Scheme to Defraud

31. On or about the dates listed below, in the District of Maryland and elsewhere, Defendant KIMBERLY GOODWIN, Coconspirator One, and Coconspirator Two, and other persons both known and unknown to the Grand Jury, having devised and intending to devise the aforementioned scheme and artifice to defraud described in paragraphs 3 and 25 above for the purpose of executing said scheme and artifice and attempting to do so, did transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communications, certain writings, that is, transmission of electronic mail, as indicated below:

| Date | Point of Origin | Point of Reception | Purpose |
|---|---|---|---|
| Weekly Wire Transfers of Funds from August 2019 to June 2022 | Local 2419 Account at National Institutes of Health Federal Credit Union (Acct # 940572) | Good Leaders Account at Navy Federal Credit Union (Acct #0339) | Transfer of Funds by Defendant GOODWIN pursuant to the Good Leaders Agreement |

All in violation of Title 18, United States Code, Sections 1343, 1349, and 2.

## COUNTS TWO through FOUR
### (18 U.S.C. § 1956 (a)(1)(B)(i))

### (Money Laundering)

1. The allegations contained in paragraphs 1 through 24 of the General Allegations of this Indictment and paragraphs 1 through 26 in Count One are realleged in these Counts and are incorporated by reference as if fully set forth herein.

2. On or about the dates set forth below, in the District of Maryland, and elsewhere, Defendant KIMBERLY GOODWIN, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity:

| Count | Date | Monetary Transactions |
|---|---|---|
| 2 | From on or about October 15, 2020 through December 28, 2022 | Twenty-two (22) transfers by GOODWIN from Good Leaders Account at Navy Federal Credit Union (Acct# 0339 Savings) into an account for Individual One at Navy Federal Credit Union (Acct# 2102 Checking/1013 Savings) totaling $90,650 |
| 3 | From on or about October 15, 2020 through December 28, 2022 | Twenty-two (23) transfers by GOODWIN from Good Leaders Account at Navy Federal Credit Union (Acct# 0339 Savings) to an account for Individual Two at Navy Federal Credit (Acct# 2714 Checking/3798 Savings) totaling $95,840.74 |
| 4 | From on or about February 26, 2021 through November 23, 2022 | Seven (7) withdrawals of cash by GOODWIN from Good Leaders Account at Navy Federal Credit Union (Acct# 0339) totaling $22,199 |

All in violation of 18 U.S.C. § 1956 (a)(1)(B)(i) and 2.

## COUNTS FIVE through NINE
### (18 U.S.C. § 1957)

### (Money Laundering)

1. The allegations contained in paragraphs 1 through 24 of the General Allegations of this Indictment and paragraphs 1 through 25 in Count One are realleged in these Counts and are incorporated by reference as if fully set forth herein.

2. On or about the dates set forth below, in the District of Maryland, and elsewhere, Defendant Kimberly GOODWIN, did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the, deposit, withdrawal, transfer, and exchange of funds, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343:

| Count | Date | Monetary Transaction |
|---|---|---|
| 5 | On or about March 30, 2020 | Deposit by GOODWIN of a cashier's check $125,400.00 drawn against Local 2419's Account at NIH Federal Credit Union (Acct# 940572) into the Good Leaders Account at Navy Federal Credit Union (Acct# 0339) |
| 6 | On or about April 16, 2020 | Wire Transfer by GOODWIN of $109,200 from Good Leaders Account at Navy Federal Credit Union (Acct# 0339) to Goodwin's Personal Account at Navy Federal Credit Union (Acct# 8898) |
| 7 | On or about August 17, 2020 | Deposit by GOODWIN of a cashier's check $15,000.00 drawn against Local 2419's Account at NIH Federal Credit Union (Acct# 940572) into the Good Leaders Account at Navy Federal Credit Union (Acct# 0339 Savings) |
| 8 | On or about October 14, 2020 | Deposit by GOODWIN of a cashier's check $162,240.00 drawn against Local 2419's Account at NIH Federal Credit Union (Acct# 940572) into the Good Leaders Account at Navy Federal Credit Union (Acct# 0339) |

| 9 | On or about January 24, 2022 | Deposit by GOODWIN of a cashier's check $81,120.00 drawn against Local 2419's Account at NIH Federal Credit Union (Acct# 940572) into the Good Leaders Account at Navy Federal Credit Union (Acct# 0339) |

All in violation of Title 18, United States Code, 18 U.S.C. §§ 1957 and 2.

## FORFEITURE ALLEGATION on THEFT and FRAUD
### (18 U.S.C. § 981(a)(1)(C))

1. The allegations contained in Counts One through Nine of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offenses set forth in Counts One through Nine of this Indictment, Defendant KIMBERLY GOODWIN shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses of conviction. The property to be forfeited includes, but is not limited to, at least $974,658.00 in money and property taken by Defendant KIMBERLY GOODWIN; and

3. If any of the property described above, as a result of any act or omission of Defendant KIMBERLY GOODWIN:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL:

**SIGNATURE REDACTED**

FOREPERSON

*Kelly O. Hayes by vjf*
KELLY O. HAYES
UNITED STATES ATTORNEY
FOR THE DISTRICT OF MARYLAND

Trial Attorney Vincent J. Falvo, Jr.,
United States Department of Justice

Trial Attorney Samuel Benjamin Tonkin
United States Department of Justice

Dated: March 20, 2025

19